UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA
**Alexandria Division**

| | | |
|---|---|---|
| **DATASTAFF TECHNOLOGY** | ) | |
| **GROUP, INC.,** | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Civil Action No. 1:07cv450** |
| | ) | |
| **CENTEX CONSTRUCTION** | ) | |
| **COMPANY, INC., et al.,** | ) | |
| **Defendants.** | ) | |

## <u>MEMORANDUM OPINION</u>

Plaintiff, a second-tier subcontractor on a federal construction project, brings this suit against the prime contractor and the issuer of the performance and payment bond for the project to recover for work performed on the project pursuant to a contract with a defaulting first-tier subcontractor. Plaintiff asserts (i) an untimely Miller Act[1] claim against both defendants, (ii) constructive fraud claims against both defendants, and (iii) a *quantum meruit* claim against the prime contractor. At issue on defendants' motion for summary judgment are the following questions:

1. Whether the undisputed facts preclude plaintiff from relying on equitable estoppel to rescue its untimely Miller Act claim;

2. Whether the undisputed factual record demonstrates that plaintiff cannot show the reasonable reliance required to establish its claims for constructive fraud; and

3. Whether plaintiff can recover in *quantum meruit* from the prime contractor when the plaintiff also had an express contract covering the subject matter with the first-tier subcontractor.

For the reasons that follow, summary judgment must be granted in part and denied in

---

[1] 40 U.S.C. § 3131 *et seq.*

-1-

part.

**I.**[2]

On September 28, 2004, Plaintiff, Datastaff, Inc. ("Datastaff") entered into a contract with Accutronics Datacom, Inc. ("Accutronics") to provide personnel for several projects, including a federal construction project at the Defense Threat Reduction Center, located in Fort Belvoir, Virginia (the "Project"). Accutronics had earlier entered into a subcontract with defendant Centex Construction Company, Inc. ("Centex"), the prime contractor on the Project, to complete telecommunications work on the Project. Accutronics's subcontract with Centex provided that the day-to-day administration of the subcontract would be handled by Centex's electrical subcontractor, Dynaelectric Company ("Dynaelectric"), but reserved Centex's right to administer any part of the subcontract. Work on the Project was secured by a performance and payment bond between Centex and Travelers Casualty and Surety Company of America ("Travelers").

As these undisputed facts reflect, Accutronics was a "first-tier" subcontractor, while Datastaff was a "second-tier" subcontractor. So-called "first-tier" subcontractors refer to the first level of subcontractors below the prime contractor, namely those subcontractors in privity with the prime contractor. The "second-tier" subcontractors are those in privity with a "first-tier" subcontractor. Second-tier subcontractors are typically referred to as sub-subcontractors. "Third-tier" subcontractors are in privity only with a "second-tier" subcontractor. These classifications are important in determining eligibility to sue on the bond: First- and second-tier

---

[2]The facts recited here are derived from the record as a whole and are largely undisputed. Where disputes exist, they are noted and, if material, the facts are construed favorably to the non-moving party. *See Matsushita Elec. Indus. Corp. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

subcontractors are covered by the bond, while third-tier subcontractors are not.  40 U.S.C. §

3133(b)(2).

The record reflects that by the summer of 2005, Accutronics was in default on its

obligation to pay Datastaff for work on the Project.  Accordingly, in July or August 2005,

Datastaff's President, Keith Ricks, called Centex and threatened to stop work on the Project.[3]

James Anderson, Centex's Project Executive, assured Ricks that the Project was properly bonded

and that Datastaff would be compensated for its services in the event that Accutronics did not

pay Datastaff.  According to Datastaff, Anderson also told Ricks that the project would be

"crippled" if Datastaff pulled its employees.  After this conversation, Datastaff continued work

on the Project, which it completed on August 28, 2005.  Datastaff then promptly obtained

counsel to resolve its payment dispute with Accutronics.

On September 21, 2005, in response to further inquiries by Datastaff, Anderson stated

that Accutronics was "under" Dynaelectric, which was "under" Centex.  This conversation

apparently led Datastaff's counsel to believe that Datastaff was a third-tier subcontractor on the

Project behind Dynaelectric and Accutronics, and hence ineligible to sue on the bond.  On

October 18, 2005, because Accutronics had not fully paid for Datastaff's services,  Datastaff

submitted a claim on the bond to Travelers in which Datastaff, allegedly relying on Anderson's

---

[3] It is disputed whether this conversation took place in July or August 2005.  While
Datastaff originally alleged the conversation took place in July, the phone records produced
during discovery show that no telephone calls were placed to Centex from Datastaff until August
4, 2005.  A 1.7 minute call took place that day.  Another 9.8 minute call between Datastaff and
Centex took place on August 24, 2005.  While this dispute may ultimately be material to the
resolution of the *quantum meruit* claim, it is not material to the resolution of the Miller Act and
constructive fraud claims.

representations,[4] stated that Datastaff was "a third tier subcontractor under . . . Accutronics."

Travelers responded on October 24, 2005, requesting additional information, including an

Affidavit of Claim form to be executed by Datastaff.  Datastaff returned the completed form on

November 28, 2005.  Then, on December 2, 2005, Travelers notified Datastaff that it was

denying the claim on the ground that, "[i]n reviewing the support . . . received from Data Staff

Technology Group, Inc. and Centex Construction Company, Inc. it appears that Data Staff

Technology Group, Inc. is a 3rd tier contractor and therefore not protected by this bond."

Despite indicating that she had used information from Centex in arriving at this conclusion, Inez

Meyerholz, the Travelers agent who investigated the claim and wrote the letter, admitted later

that she based her statement that Datastaff was a third-tier subcontractor solely on Datatsaff's

October 18, 2005 letter stating that it believed itself to be a third-tier subcontractor.

Significantly, the letter also stated that Travelers was open to considering "evidence to the

contrary," and invited Datastaff to provide additional information that might have been

overlooked.  Datastaff chose not to respond, even though by this time it had retained counsel to

pursue this claim.  Indeed, Travelers received no further correspondence from Datastaff on this

matter until January 19, 2007.

On December 13, 2005, Centex sent a separate response to Datastaff regarding

Datastaff's October 18, 2005 claim submitted to Travelers.  The letter stated that Centex had

forwarded Datastaff's claim to Acstar Insurance Company, Accutronics's surety, because Centex

---

[4] Datastaff also contends that it had limited communication with Accutronics's counsel, who stated that she believed Datastaff was a third-tier subcontractor.  This is not hearsay, as defendants argue, because it is not offered to prove Datastaff was a third-tier subcontractor, but to prove the statement was made to Datastaff.

believed Accutronics was the proper party to whom Datastaff's claim should be addressed.

Notwithstanding Travelers's earlier denial of Datastaff's claim, Centex stated that it was

investigating Datastaff's claim and requested that Datastaff submit further documentation in

support of its claim within seven days.[5]  Datastaff apparently never responded to this request.

Meanwhile, Centex pursued a suit against both Accutronics and its surety, Acstar,

alleging Accutronics's breach of its subcontract with Centex.  The complaint was filed in the

U.S. District Court for the Eastern District of Virginia on January 17, 2006, and on February 2,

2006, Centex forwarded a copy of the complaint to Datastaff.  Eight days later, pursuant to its

subcontract with Accutronics, Datastaff initiated arbitration proceedings against Accutronics.

Datastaff prevailed in this arbitration, winning an award against Accutronics, which Accutronics

refused to pay.  Then, Datastaff, on the basis of the arbitration award, obtained a judgment

against Accutronics in North Carolina Superior Court on November 14, 2006 and thereafter

domesticated this judgment in Virginia on or about January 23, 2007.  Accutronics has failed or

otherwise refused to satisfy this judgment.

On August 24, 2006, a memorandum opinion and order issued in Centex's suit against

Accutronics and Acstar, ruling that Centex had a valid claim against Accutronics

notwithstanding Centex's partial assignment of the subcontract to Dynaelectric.[6]  Datastaff's

---

[5] Also worth noting is that despite requesting additional information, both Travelers, in its
December 2, 2005 letter, and Centex, in its December 13, 2005 letter, expressly reserved all
rights and defenses they may have concerning Datastaff's claim.

[6] *Centex Construction, LLC v. Acstar Insurance Co., et al.*, 448 F. Supp. 2d 697 (E.D. Va.
2006) (denying defendants' motions for summary judgment, granting Centex's motion for
summary judgment in part, and granting Centex's motion to file supplemental motions for
summary judgment).  The parties in the *Centex* litigation thereafter settled that matter.

counsel received a copy of the opinion and order at or about this time.  Sometime later, in September or October 2006, Datastaff's counsel read the opinion and order and realized, for the first time, that Datastaff was a second-tier subcontractor, rather than a third-tier subcontractor, as previously believed.  Yet, not until January 19, 2007 did Datastaff communicate this view to Travelers and request payment for the amount of the judgment Datastaff had obtained against Accutronics.  Travelers denied Datastaff's request on February 15, 2007, on the ground that the Miller Act's limitation period had expired.

Finally, on May 3, 2007, Datastaff filed the complaint in this action against Centex and Travelers, alleging four causes of action: (i) that the Miller Act afforded Datastaff substantive rights under the bond as a second-tier contractor (Count 1); (ii) that Datastaff conferred a material benefit upon Centex for which it has not been compensated and, therefore, is entitled to *quantum meruit* recovery (Count 2); and (iii) that both Centex and Travelers committed constructive fraud by making false representations on which plaintiff detrimentally relied (Counts 3 and 4).  Defendants moved to dismiss, which motion was converted into a motion for summary judgment.  *See* Rule 12(b) and Rule 56, Fed. R. Civ. P.  Following focused discovery, defendants' motion was fully briefed and argued and is now ripe for disposition.

**II.**

The summary judgment standard is too well-settled to require elaboration here.  In essence, summary judgment is appropriate only where, on the basis of undisputed material facts, the moving party is entitled to judgment as a matter of law.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  And importantly, the non-moving party may not rest upon a "mere scintilla" of evidence to defeat summary judgment, but must set forth specific facts showing a genuine issue

for trial. *Id.* at 324; *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986).

## III.

### A.

The Miller Act requires that a payment bond and surety must be furnished "for the protection of all persons supplying labor and material in carrying out the work provided for in the contract" on all federal construction contracts of more than $100,000. 40 U.S.C. § 3131(b)(2). The Act further provides that any person who furnishes labor or materials for such a bonded project and has not been paid may sue on the bond for the amount due. § 3133(b)(1). The statute limits recovery on the bond to first- and second-tier subcontractors. § 3133(b)(2). Importantly, a cause of action under the Miller Act "must be brought no later than one year after the day on which the last of the labor was performed or material was supplied by the person bringing the action." § 3133(b)(4).

Here, Datastaff does not dispute that it brought this action more than one year after completing work on the Project.[7] Nevertheless, it contends that the claim should not be barred because Centex and Travelers led Datastaff to believe that it was a third-tier subcontractor ineligible to recover on the Project's bond and thus that a suit under the Miller Act against Centex and Travelers would be futile. Datastaff claims these misrepresentations are the reason it failed to file its claim within the Miller Act's one-year limitations period, and consequently the doctrine of equitable estoppel bars defendants from asserting the statute of limitations as a defense. Because this claim arises under the Miller Act, federal law applies. *See United States*

---

[7] Datastaff last worked on the Project on August 28, 2005. This action was filed May 3, 2007.

*ex rel. Texas Bitulithic Co. v. Fid. & Deposit Co. of Md.*, 813 F.2d 697, 700 (5th Cir. 1987)

("The Miller Act provides a federal cause of action, and the extent of the limitation period must

be determined in accordance with federal law.").

     The doctrine of equitable estoppel is a "well-established concept invoked by courts to aid

a party who, in good faith, has relied, to his detriment, upon the representations of another."

*United States ex rel. Humble Oil & Ref. Co. v. Fid. & Cas. Co. of New York*, 402 F.2d 893, 897

(4th Cir. 1968) (finding that equitable estoppel barred defendant's assertion of a statute of

limitations defense).  Based on "the maxim that no man may take advantage of his own wrong,"[8]

equitable estoppel bars a statute of limitations defense by a defendant who, "by his conduct, lulls

another into a false security, and into a position he would not take only because of such conduct."

 *Humble Oil*, 402 F.2d at 897 (quoting *McWaters & Bartlett v. United States ex rel. Wilson*, 272

F.2d 291, 296 (10th Cir. 1959)).  In this circuit, a plaintiff need not demonstrate actual fraud or

deception by a defendant to invoke equitable estoppel.  *Id.* at 898; *see also United States ex rel.

J. Bobby Currin & Sons v. J & W Builders,* Inc., 17 F. Supp. 2d 462, 465 (D. Md. 1996).[9]

Rather, equitable estoppel may apply where a defendant makes no intentional misrepresentations,

but merely takes actions it "should unmistakably have understood would cause the [plaintiff] to

---

     [8] *Glus v. Brooklyn E. Dist. Terminal*, 359 U.S. 231, 232 (1959) (finding that equitable estoppel barred a statute of limitations defense in a suit under the Federal Employers' Liability Act).

     [9] Other circuits arguably require a finding of deception before applying equitable estoppel to a bar a statute of limitations defense in a Miller Act suit.  *See United States ex rel. Nelson v. Reliance Ins. Co.*, 436 F.2d 1366, 1370 (10th Cir. 1971); *Gen. Ins. Co. of Am. v. United States ex rel. Audley Moore & Son*, 406 F.2d 442, 444 (5th Cir. 1969); *Safe Env't of Am., Inc. v. Employers Ins. of Wasau*, 278 F. Supp. 2d 121, 127 (D. Mass. 2003) (quoting *McWaters & Bartlett*, 272 F.2d at 296); *Sam Finley, Inc. v. Pilcher, Livingston, & Wallace, Inc.*, 314 F. Supp. 654, 655-56 (S.D. Ga. 1970).

delay filing his charge." *Felty v. Graves-Humphreys Co.*, 818 F.2d 1126, 1128 (4th Cir. 1987) (quoting *Price v. Litton Bus. Sys.*, 694 F.2d 963, 965-66 (4th Cir. 1982)). A plaintiff must also demonstrate that it actually and reasonably relied on these misrepresentations. *Id.* at 1128-29; *Humble Oil*, 402 F.2d at 898 (citing *Bergeron v. Mansour*, 152 F.2d 27, 30 (1st Cir. 1945)). Thus, "[i]f, at the time when he acted, such party had knowledge of the truth, or had the means by which with reasonable diligence he could acquire the knowledge so that it would be negligence on his part to remain ignorant by not using those means, he cannot claim to have been misled by relying upon the representation or concealment." *Heckler v. Cmty. Health Servs. of Crawford*, 467 U.S. 51, 59-60 n.10 (1984).[10] In other words, it must have been the defendant's misrepresentations, and not the plaintiff's own failure to act, that caused the plaintiff to miss the filing deadline. *See Felty*, 818 F.2d at 1129; *see also United States v. Aetna Cas. & Sur. Co.*, 480 F.2d 1095, 1099 (8th Cir. 1973).

These principles are well-illustrated in the many reported cases in which equitable estoppel has been employed as a defense to the Miller Act's one-year statute of limitations. For example, courts have held that the doctrine applies where a defendant explicitly states that it will

---

[10] *Heckler* and this circuit's precedent foreclose Datastaff's argument that due diligence applies only in equitable tolling, and not in equitable estoppel cases. *See id.*; *Bakery & Confectionery Union & Indus. Intern. Pension Fund v. Ralph's Grocery Co.*, 118 F.3d 1018, 1027 (4th Cir. 1997); *see also Tartal v. Henderson*, No. 99-2007, 2000 WL 384037, at *1 (4th Cir. Apr. 17, 2000) (per curiam) (rejecting plaintiff's equitable estoppel claim because "she was not diligent in preserving her legal rights"); *Felty*, 818 F.2d at 1129 ("One who fails to act diligently cannot invoke equitable principles to excuse that lack of diligence.") (quoting *Baldwin County Welcome Ctr. v. Brown*, 466 U.S. 147, 151 (1984));*United States ex rel. Cogifer, S.A. v. Ins. Co. of North Am.*, Civ. A. No. 86-183-NN, 1987 WL 19932, at *4 (E.D. Va. Oct. 15, 1987) (unpublished).

not seek to enforce the statute of limitations[11] or where a defendant admits liability and promises to pay a plaintiff, yet cuts off negotiations after the Miller Act limitations period has run.[12] Although courts have found that prolonged negotiations and assurances of forthcoming settlements may be grounds for estoppel,[13] courts have consistently declined to apply equitable estoppel to bar the Miller Act's statute of limitations where a surety has merely indicated to a complaining subcontractor that the subcontractor's claim was being investigated.[14]  Likewise, courts have consistently declined to apply the doctrine to a surety that flatly denied a subcontractor's claim and did nothing to lead the subcontractor "to believe that it would acknowledge and pay the claim."[15]

---

[11]  *See, e.g.*, *Cada v. Baxter Healthcare Corp.*, 920 F.2d 446, 450-51 (7th Cir. 1990).

[12]  *See, e.g.*, *Humble Oil*, 402 F.2d at 896 (finding equitable estoppel where surety reneged on promise to pay after statute of limitations had run).

[13]  *See, e.g.*, *United States ex rel. Nelson v. Reliance Ins. Co.*, 436 F.2d 1366, 1371 (10th Cir. 1971) (holding that estoppel applied where surety repeatedly responded to subcontractor's threats to sue "with answers which assured them that amicable settlement was just around the corner"); *United States ex rel. Atlas Erection Co. v. Cont'l Cas. Co.*, 357 F. Supp. 795, (E.D. La. 1973) (finding estoppel where surety "assured [the subcontractor] that all valid invoices would be paid" and "requested [the surety's] continued cooperation in an amicable resolution of the claim").

[14]  *See, e.g., United States ex rel. E. Coast Contracting, Inc. v. United States Fid. & Guar. Co.*, 133 Fed. Appx. 58, 60 (4th Cir. 2005) (unpublished); *see also Safe Env't of Am., Inc. v. Employers Ins. of Wasau*, 278 F. Supp. 2d 121, 127 (D. Mass. 2003) (refusing to apply equitable estoppel based on surety's letter responding to subcontractor's claim and requesting supporting documentation); *Cogifer*, 1987 WL 19932, at *6 (finding equitable estoppel inapplicable where surety "never agreed to pay all or any part of [the subcontractor's] claims").  The Fourth Circuit in *East Coast Contracting* noted that rather than agree to pay the subcontractor's claim, the surety had expressly reserved its rights and defenses in communicating with the subcontractor and had done nothing to impede the filing of the subcontractor's claim.  133 Fed. Appx. at 60.

[15]  *McWaters & Bartlett*, 272 F.2d at 296 (rejecting equitable estoppel claim where defendant "denied liability for this claim long before the time fixed for suit in the bond had

These principles, applied here, compel the conclusion that equitable estoppel does not apply in this case. First, the record is devoid of any evidence that Centex or Travelers did or said anything to "lull[] [Datastaff] into a false security" that its claim would be paid.[16]  To the contrary, both Travelers and Centex told Datastaff that its claim would not be paid unless Datastaff could demonstrate that it was not a third-tier subcontractor.  Both defendants also explicitly reserved all their rights and defenses in rejecting Datastaff's claims.[17]  Thus, defendants' representations bear none of the hallmarks of those representations typically found to merit equitable estoppel, but instead resemble more closely the kinds of representations in cases where estoppel was found not to apply because the subcontractor's claim was flatly denied by the surety.  *See, e.g.*, *McWaters & Bartlett*, 272 F.2d at 296.  These cases sensibly hold that, absent some promise or suggestion by a defendant that plaintiff's claim will be settled through informal means, a plaintiff has "no impediment to timely filing [its] action." *See E. Coast Contracting*, 133 Fed. Appx. at 60.  In other words, a plaintiff whose letters or other informal demands for payment are unequivocally rejected should understand that its only recourse is to file a claim for relief under the Miller Act in district court.

Datastaff contends that while equitable estoppel is usually applied when a defendant makes assurances of forthcoming payment, this precise factual scenario is not necessary for

---

passed").

[16] *Humble Oil*, 402 F.2d at 897 (finding that equitable estoppel barred defendant's assertion of a statute of limitations defense where defendant had repeatedly made representations "that the surety would amicably settle" the plaintiff's claim).

[17] *See E. Coast Contracting*, 133 Fed. Appx. at 60 (rejecting plaintiff's equitable estoppel claim where surety wrote letters that merely promised to investigate expressly reserving the statute of limitations defense).

equitable estoppel to apply.  Rather, it contends that any statement or conduct by a surety or general contractor that leads the plaintiff to delay filing suit is sufficient to establish equitable estoppel.  Here, Datastaff claims that Centex and Travelers, by stating that Datastaff was a third-tier subcontractor, "lull[ed] [Datastaff] into a false security" that a Miller Act suit would be futile.

This argument fails because it ignores whether Datastaff's claim of being "lulled" is reasonable.  It is not.  Even assuming, *arguendo*, that defendants should have known their misrepresentations would delay Datastaff's filing of a Miller Act complaint, Datastaff's own dealings with Accutronics and Centex put it on notice that it was a second-tier subcontractor. Datastaff never dealt with Dynaelectric, the contractor it was told was "above" Accutronics. Rather, when Accutronics failed to pay Datastaff for its services, Datastaff sought relief by appealing directly to Centex.  Moreover, Datastaff admitted it knew payment flowed from Centex directly to Accutronics, and then from Accutronics to Datastaff.  This alone should have been a strong clue to Datastaff's counsel to regard with skepticism any statement that Datastaff was a third-tier contractor and to conduct its own due diligence on the issue.

Nor are these the only signs that should have alerted Datastaff that its reliance was unreasonable.  Additionally, Datastaff received a copy of Centex's complaint against Accutronics on February 2, 2005, more than six months before the end of the statute of limitations.  This complaint referenced and quoted from the subcontract between Centex and Accutronics, making clear that Centex believed it had a right to sue on its subcontract with Accutronics notwithstanding the assignment of the day-to-day administration of the Accutronics subcontract to Dynaelectric.  This complaint put Datastaff on notice that it was a second-tier subcontractor.

Thus, even if Datastaff did not know it was a second-tier subcontractor when it initially made its claim in October 2005, by February 2, 2006, it certainly had the means to discover this fact well before the end of the Miller Act's claim period.  *See Cada v. Baxter Healthcare Corp*. 920 F.2d 446, 453 (7th Cir. 1990) ("When as here the necessary information is gathered after the claim arose but before the statute of limitations has run, the presumption should be that the plaintiff could bring suit within the statutory period and should have done so.").

While certainly not dispositive, it is important to note that Datastaff was represented by counsel regarding its claim against Accutronics starting on August 30, 2005, only two days after the one-year limitations period began to run.  *See Bobby Currin & Sons*, 17 F. Supp. 2d at 466 (citing *Humble Oil*, 402 F.2d at 900 & n. 9)).  Datastaff's counsel made virtually no effective effort to determine whether Datastaff was a third-tier subcontractor. As further evidence that Datastaff's status as a third-tier subcontractor was far from certain, Datastaff's counsel called Centex once in December 2005 for information on this point.  When Anderson returned Datastaff's call, he did not mention whether Datastaff was a second- or third-tier subcontractor, but merely stated that Centex was still "having issues with Accutronics."  Yet, Datastaff never followed up with Centex to determine whether it was a second-tier subcontractor covered by the bond.  Nor did Datastaff submit further documentation in response to Travelers's and Centex's requests for more information regarding Datastaff's claims.  Instead, it chose to accept, uncritically and at face value, statements by defendants that Datastaff was a third-tier subcontractor.  And significantly, Datastaff chose to do so notwithstanding the signs pointing to the contrary and notwithstanding that the source of the statements on which it chose to rely were parties with interests plainly adverse to Datastaff's.

-13-

Finally, despite Datastaff's claims that defendants' misrepresentations caused Datastaff to delay filing a Miller Act suit, the evidence suggests that Datastaff knowingly chose to focus its efforts instead on Accutronics.  Eight days after learning that Centex had sued Accutronics, Datastaff initiated arbitration proceedings against Accutronics and vigorously pursued a judgment against Accutronics alone.  Datastaff did not contact defendants in September or October 2006, when it claims it learned it was a second-tier contractor, but waited until after Accutronics failed to pay Datastaff's judgment to demand payment on the bond in January 2007.  Even then, Datastaff then waited four more months to file its Miller Act claim.  Hence, the causal nexus between defendants' alleged misrepresentations and Datastaff's failure to file a timely claim is weak at best.

In sum, there are no material facts in dispute regarding Datastaff's Miller Act claim.  The claim is untimely, and equitable estoppel does not apply to excuse this untimeliness because defendants' representations gave Datastaff no reason to believe that it would be paid if it delayed filing suit.  In any event, Datastaff's reliance on these representations was unreasonable.  Equitable estoppel was not designed to rescue an untimely claimant from circumstances where, as here, parties adverse consistently denied to the claimant any responsibility to pay under the bond.  Defendants are therefore entitled to summary judgment on Datastaff's Miller Act claim.

**B.**

Datastaff next asserts constructive fraud claims against Centex and Travelers.  Specifically, Datastaff contends that Centex is liable for constructive fraud based on Anderson's misrepresentations about the bond's coverage and Datastaff's status as a third-tier subcontractor.  It further contends that Travelers is liable for constructive fraud based on the representations in

-14-

the December 2, 2005 letter stating that Datastaff's claim was denied because it was a third-tier

subcontractor.  Datastaff claims these misrepresentations led it to pursue its claim against

Accutronics directly, rather than to file a Miller Act suit on the bond.  In short, Datastaff's

constructive fraud claims stem from the same factual circumstances as its Miller Act equitable

estoppel claim.[18]

To prove constructive fraud under Virginia law, a plaintiff must show "by clear and

convincing evidence that a false representation of a material fact was made innocently or

negligently, and the injured party was damaged as a result of his reliance upon the

misrepresentation."  *Prospect Dev. Co. v. Bershader*, 515 S.E.2d 291, 297 (Va. 1999) (internal

punctuation and citations omitted).  The plaintiff must also show that a reasonable person would

believe in and rely on the false representation.  *Evaluation Research Corp. v. Alequin*, 439 S.E.2d

387, 390 (Va. 1994).  Reliance is not reasonable if the party asserting constructive fraud "makes

a partial inquiry, with full opportunity of complete investigation, and elects to act upon the

knowledge obtained from the partial inquiry."  *Hitachi Credit Am. Corp. v. Signet Bank*, 166

F.3d 614, 629 (4th Cir. 1999) (citing *Harris v. Durham*, 127 S.E.2d 65, 71-72 (Va. 1962)).

Thus, in certain pertinent respects, the elements of constructive fraud in Virginia are

essentially similar to the elements of equitable estoppel.  To establish constructive fraud,

Datastaff must prove not only that defendants made misrepresentations, but that Datastaff

reasonably relied on those misrepresentations in foregoing a Miller Act suit.  Yet, as

demonstrated above, Datastaff has not shown that its reliance on defendants' alleged

---

[18]   Indeed, the factual predicate in the complaint for the equitable estoppel claim merely
refers to and incorporates the allegations relating to the constructive fraud claims.

-15-

misrepresentations was reasonable. Despite signs that defendants' statements were not correct, Datastaff made no effort to determine for itself whether it had a viable Miller Act claim, choosing instead to rely on the assertions of adverse parties. Hence, as with the equitable estoppel argument, Datastaff's constructive fraud claims fail and defendants are entitled to summary judgment on these claims.

## C.

Datastaff's final claim is that it conferred a material benefit upon Centex by providing labor for the Project notwithstanding Accutronics's nonpayment. It claims that because it has not been paid for this work, Centex unjustly enriched itself at Datastaff's expense, and that Datastaff is entitled to *quantum meruit* for the services rendered.

To recover for *quantum meruit*, a plaintiff must show that "(i) he rendered valuable services, (ii) to the defendant, (iii) which were requested and accepted by the defendant, (iv) under such circumstances as reasonably notified the defendant that the claimant, in performing the work, expected to be paid by the defendant." *Raymond, Colesar, Glaspy, & Huss, P.C. v. Allied Capital Corp.*, 961 F.2d 489, 491 (4th Cir. 1992); *see also Unidyne Corp. v. Aerolineas Argentinas*, 590 F. Supp. 391, 397 (E.D. Va. 1984). The doctrine is "based on equitable principles . . . that a man shall not be allowed to enrich himself unjustly at the expense of another." *Kern v. Freed Co.*, 299 S.E.2d 363, 365 (Va. 1983) (internal punctuation and citations omitted). Whether the defendant has been *unjustly* enriched is therefore essential to recovery for *quantum meruit*. Thus, "[w]here one is obligated by an express contract to pay for a benefit he receives, and has in fact paid, he is not liable for that benefit to another party under a theory of unjust enrichment." *Cummins Atlantic, Inc. v. G.H. Glover, Inc.*, No. 112346, 1992 WL 884731,

at *1 (Va. Cir. Ct. June 15, 1992) (unpublished).  This point is well-illustrated in the *Kern* case,

where the Supreme Court of Virginia held that a plaintiff that sold goods to defendant's agent,

but was not paid, could not recover from the defendant, because the defendant had already paid

the agent for the goods.[19]

Centex argues that summary judgment is appropriate because Datastaff had a contract

with Accutronics for work on the Project.  In support of this argument, Centex relies on Virginia

law holding that "[i]n no event . . . will a court impose an implied contractual relation on parties

in contravention of an express contract."[20]   While some courts have held that this rule applies to

bar a suit between A and B where an express contract on the same subject matter exists between

A and C,[21] other courts have rejected such an application of this rule.[22]

---

[19] *Kern*, 299 S.E.2d at 365 ("Kern has not been unjustly enriched. He was obligated to pay
either Elk Mountain or Courtney for the appliances and, indeed, contends he has already paid
them."); *see also United States ex rel. Sunworks Div. of Sun Collector Corp. v. Ins. Co. of North
Am.*, 695 F.2d 455, 458 (10th Cir. 1982) (reversing the dismissal of a second-tier subcontractor's
*quantum meruit* claim against a general contractor where it alleged that the general contractor
had received compensation from the United States pursuant to its contract but had paid neither
the subcontractor nor the plaintiff for the services rendered).

[20] *In re Virginia Block Co.*, 16 B.R. 771, 774 (W.D. Va. Bankr. 1982) (refusing to impose
an implied contract on behalf of third party that contravened insured's and insurer's express
contract under which dividends were to be paid to insured).

[21] *See, e.g.*, *Federal Sav. & Loan Ins. Corp. v. Quality Hotels & Resorts, Inc.*, No. 90-
2391, 1991 WL 30211, at *4 (4th Cir.  Mar. 11, 1991) (unpublished); *Virginia Block Co.*, 16
B.R. at 774; *Rosenbaum v. Price Const. Co.*, 184 S.E. 261, 263-64 (W.Va. 1936) (holding that
"plaintiff's express contract with the surety company precludes an implied contract with
[defendant]").

[22] *See, e.g.*, *Raymond, Colesar*, 961 F.2d at 491-93 (noting that a defendant cannot be
forced to pay for benefits received from a plaintiff merely because a third party with whom the
plaintiff contracted failed to pay for those services, but holding that an implied contract may exist
in some circumstances); *Park Eldenwood Assoc. v. Firestone Capital Corp.*, No. 106597, 1991
WL 835327, at *2 (Va. Cir. Ct. Dec. 2, 2001) (unpublished) (finding that express contract

In any event, while "the existence of an express contract between A and B undermines a *quantum meruit* claim between A and C for those same services,"[23] summary judgment on this claim is improper on the current record, which is anemic regarding whether Centex was unjustly enriched by Datastaff's services.  Were the undisputed factual record to show that Centex paid Accutronics for Datastaff's services, then it would follow that, because Centex has not been unjustly enriched, Datastaff could not recover from Centex simply because Accutronics failed to pay Datastaff.  *See, e.g., Kern*, 299 S.E.2d at 365.  Accordingly, the *quantum meruit* claim requires further litigation, either by summary judgment or trial.[24]

In conclusion, the undisputed material facts reflect that Datastaff is not entitled to recover under the Miller Act, as it filed suit well after the one-year statute of limitations had run.

---

between plaintiff and third party did not preclude implied contract between plaintiff and defendant where defendant had not agreed to be bound by the express contract, the *quantum meruit* claim covered a different subject matter than the express contract, and the express contract did not govern the obligations of defendant).

[23] *Raymond, Colesar*, 961 F.2d at 493.

[24] Centex also argues that because the object of an action, and not its form, dictates the applicable statute of limitations in Virginia, Datastaff may not rescue its untimely Miller Act claim by pleading identical facts as the basis for a *quantum meruit* claim.  *See, e.g.*, *Richmeade, L.P. v. City of Richmond*, 594 S.E.2d 606, 608-09 (Va. 2004).  Yet, courts have recognized that a Miller Act claim does not preclude a *quantum meruit* or unjust enrichment claim.  *See United States ex rel. Coastal Steel Erectors v. Algernon Blair, Inc.*, 479 F.2d 638, 640-41 (4th Cir. 1973); *Cummins Atlantic, Inc. v. G.H. Glover, Inc.*, No. 112346, 1992 WL 884731, at *1 (Va. Cir. Ct. June 15, 1992) (unpublished) (citing *United States ex rel. Sunworks Div. of Sun Collector Corp.  v. Ins. Co. of North Am.*, 695 F.2d 455, 458 (10th Cir. 1982).  In any event, Datastaff's *quantum meruit* claim does not arise out of the same facts as its Miller Act claim, but focuses specifically on Datastaff's decision, based on Centex's representations, to continue providing labor for the Project after Accutronics's breach.  Thus, Datastaff is not trying to rescue its untimely Miller Act claim by stating two causes of action based on identical facts; rather it asserts two distinct claims involving distinct factual elements.

Moreover, because Datastaff has not shown that it reasonably relied upon defendants' alleged

misrepresentations, equitable estoppel and constructive fraud do not apply.   Thus, defendants are

entitled to summary judgment on Counts 1, 3, and 4 of Datastaff's complaint.   Yet, material facts

are still in dispute regarding Datastaff's *quantum meruit* claim against Centex.   Therefore,

Centex is not entitled to summary judgment on Count 2 of the complaint.

       An appropriate Order will issue.


                                        _____/s/_____

Alexandria, Virginia                                     T. S. Ellis, III

December 11, 2007                               United States District Judge